UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. _____ |
| | ) | |
| | ) | |
| | ) | **Notice of Motion for Relief** |
| | ) | **From (Check All That Apply):** |
| | ) |     **Automatic Stay in a Chapter 7/13 Case** |
| | ) |     **Chapter 13 Codebtor Stay** |
| Debtor(s) | ) | |

1. **YOU ARE NOTIFIED** that a motion was filed by _____, the moving party, for (Check all that apply):

   Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 U.S.C. § 362.

   Relief from the stay protecting the codebtor and codebtor's property as provided by 11 U.S.C. § 1301. Codebtor's name and service address are: _____.

2. A copy of the motion is attached.  The name and service address of the moving party's attorney (or moving party, if no attorney) are: _____.

3. If you wish to resist the motion, you must, within 14 days of the service date shown below, file the following with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E. 8th Ave. #2600, Eugene OR 97401:

   a. A written response that states the facts supporting the opposition to the motion by filling in the applicable "response" portions on a copy of the original motion. If the response will be electronically filed, the response must be prepared using the fillable pdf version of the original motion unless the motion was filed on paper and could not be electronically obtained from the movant; and

   b. A fully completed notice of hearing using Local Bankruptcy Form (LBF) 721, including the date and time of the hearing. Available hearing dates and times are posted at https://www.orb.uscourts.gov under the "Hearings" heading.  If you do not have internet access, please call the court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information.

4. **<u>Failure to Object or Serve Proper Notice of Hearing</u>**. If you fail to file a timely response and notice of hearing, then the automatic stay may expire as to the debtor(s) pursuant to 11 U.S.C. § 362(e) and the stay protecting the codebtor may expire pursuant to 11 U.S.C. § 1301(d), or the court may sign an order without further notice, submitted by the moving party on LBF 720.90, granting relief from the debtor stay and/or codebtor stay.

Case 14-33163-dwh13    Doc 60    Filed 01/07/19

I certify that:

(1)  The motion was prepared using the fillable PDF version of LBF 720.80; and

(2) On _____ this notice and the motion were served on the debtor(s), any codebtor at the address listed above, the trustee, the U.S. Trustee, members of any committee elected pursuant to 11 U.S.C. § 705, and their respective attorneys.

_____
Signature of Moving Party or Attorney          (OSB#)

Case 14-33163-dwh13    Doc 60    Filed 01/07/19

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re ) Case No._____
)
) (*Check all applicable boxes*)
) **Ch. 7/13 Motion for Relief from**
) **Debtor      Chapter 13 Codebtor Stay**
) Filed by Creditor:
) _____
) *Response to Stay Motion filed by Respondent:*
Debtor(s) ) _____

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

    a. Description of collateral (car model, year, VIN, property address):


    b. Amount of debt: $_____ consisting of principal: $_____; interest: $_____;
       other:


    c. Description, amount and priority of other encumbrances on collateral. If not known, include applicable
       information from debtor's schedules if available on PACER:


       Total debt secured by collateral (total 1.b. + 1.c.): $_____.

    d. Value of collateral: $_____.
       Equity in collateral: $_____, after deducting $_____ liquidation costs.

    e. Current monthly payment: $_____.

    f. If Chapter 13:

       (1) $_____ postpetition default consisting of (e.g., $_____ payments, $_____
           late charges, $_____ fees):


       (2) $_____ prepetition default consisting of      amounts specified in proof of claim, or,
              consisting of:


    g. If Chapter 7, total amount of default $_____.

**720.80 (12/1/2018)**            Page 1 of 5

*RESPONSE (Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

2. **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*

        Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.

        Lack of insurance on collateral.

        No equity in the collateral and the property is not necessary for an effective reorganization.

        Failure of debtor to make Chapter 13 plan payments to the trustee.

        Failure of debtor to make direct payments to secured creditor required by Chapter 13 plan.

        Other (describe):

*RESPONSE (Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) 720.90 available at [https://www.orb.uscourts.gov](https://www.orb.uscourts.gov) under Forms/Local Forms) (to be completed by respondent):*

3. **Background** *(To be completed by creditor)*

    a. Date petition filed: _____ Current Chapter: _____ (7 or 13)

       If 13, current plan date _____ Confirmed:   Yes   No

       If 13, treatment of creditor's prepetition claim(s) in plan:

       If 7, debtor   has   has not stated on Local Form (LBF) 521 or 521.05 that debtor intends to surrender the collateral.

    b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see paragraph 6 below):

       Security agreement, trust deed or land sale contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on_____.

Case 14-33163-dwh13   Doc 60   Filed 01/07/19

Retail installment contract dated _____, and, if applicable, an assignment of said interest to creditor.  The security interest was perfected on the certificate of title on _____.
Other (describe):

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

4. **Request for Relief from Codebtor Stay** (*Chapter 13 only*)
   a. _____, whose address is _____
   _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes):
      codebtor received the consideration for the claim held by creditor,      debtor's plan does not propose to pay creditor's claim in full,      creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or      because:

*RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5. **Other Pertinent Information** (To be completed by creditor, if applicable):

RESPONSE (Identify any disputed items and specify the pertinent facts) (to be completed by respondent):

6.  **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. (*If you check this box, you must complete paragraph 5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*)

Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

Other (describe and explain cause):

**RESPONSE** *(Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Bankruptcy Form (LBF) 720.90 available at* https://www.orb.uscourts.gov *under Forms/Local Forms) (to be completed by respondent):*

7.  **Documents:**

**If creditor claims to be secured in paragraph 3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

**If this case is a Chapter 13 case and the collateral as to which creditor seeks stay relief is real property**, creditor has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how creditor applied the payment.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:

Postpetition payment history if not required above.

Documents establishing that creditor owns the debt described in paragraph 1 or is otherwise a proper party to bring this motion.

Other document(s) (specific description):

<u>Creditor/Attorney</u>

<u>Respondent Debtor/Attorney</u> *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____

Name:_____

Address:_____

_____

Email Address:_____

Phone No:_____

OSB#:_____

Signature:_____

Name:_____

Address:_____

_____

Email Address:_____

Phone No:_____

OSB#:_____

<u>Respondent Codebtor/Attorney</u> *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____

Name:_____

Address:_____

_____

Email Address:_____

Phone No:_____

OSB#:_____

*You are hereby notified that the creditor is attempting to collect a debt and any information obtained will be used for that purpose.*

Scott D. Crawford, SBN 086448
ZIEVE, BRODNAX & STEELE, LLP
One World Trade Center
121 Southwest Salmon St., 11th Fl.
Portland, OR 97204
(503) 946-6558 | FAX: (503) 296-2884
Email: bankruptcy@zbslaw.com
File No. 18004918

Attorneys for Movant,
U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CHALET SERIES III
TRUST

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

|  |  |
|---|---|
| In re:<br><br>DAVID L. UZZLE, *dba* HOME CARPET CENTER, INC., *dba* URBAN FLOOR, and CAROLYN J. UZZLE,<br><br><br>Debtors. | Case No.: 14-33163-dwh13<br>Chapter 13 |

### <u>CERTIFICATE OF SERVICE</u>

I, Michele Dapello, certify that I am an employee of Zieve, Brodnax, & Steele, LLP, 30 Corporate Park, Suite 450, Irvine, CA 92606, over the age of 18, and not a party within this action. I, further certify, that on the 7th day of January, 2019, I served via U.S. Mail a copy of the proposed **NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY IN A CHAPTER 13 CASE, CHAPTER 13 MOTION FOR RELIEF FROM DEBTOR STAY FILED BY U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST AND CERTIFICATE OF SERVICE** addressed to the following:

1

| | |
|---|---|
| David L. Uzzle<br>Carolyn J. Uzzle<br>19385 SW Winslow Drive<br>Beaverton, OR 97007 | Debtors |
| Ted A. Troutman<br>5075 SW Griffith Dr., #220<br>Beaverton, OR 97005 | Debtors' Counsel<br>tedtroutman@gmail.com |
| Bank of America<br>c/o Brian Moynihan, CEO<br>100 N. Tryon Street<br>Charlotte, NC 28255 | Junior Lienholder<br>**SERVED VIA CERTIFIED MAIL**<br>*To the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process.* |
| FIA Card Services<br>Bankruptcy Dept.<br>POB 15102<br>Wilmington, DE 19886 | Assignee or other notification for:<br>Bank of America |
| JP Morgan Chase Bank<br>c/o James Dimon, CEO<br>270 Park Avenue<br>New York, NY 10017 | Junior Lienholder<br>*To the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process.* |
| JPMorgan Chase Bank<br>1111 Polaris Parkway<br>Columbus, OH 43240 | Junior Lienholder<br>**SERVED VIA CERTIFIED MAIL**<br>*To the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process.* |
| Kraus USA, Inc.<br>c/o National Registered Agents, Inc. RA<br>388 State Street, #420<br>Salem, OR 97301 | Junior Lienholder<br>*To the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process.* |
| Kraus USA, Inc.<br>c/o Kevin Black<br>160 S. Amsler Ave.<br>Shippenville, PA 16254 | Junior Lienholder<br>*To the attention of an officer, a managing or general agent, or to any other agent authorized by appointment of law to receive service of process.* |
| Cisco, Inc.<br>1702 Townhurst Dr.<br>Houston, TX 77043 | Assignee or other notification for:<br>Kraus USA, Inc. |

2

|   |   |
|---|---|
| Donald R. Slayton, Attorney At Law | Assignee or other notification for: |
| 142 West 8th Avenue | Kraus USA, Inc. |
| Eugene, OR 97401 | |
| | |
| Jack R. Creel & Associates | Assignee or other notification for: |
| Attorney at Law | Kraus USA, Inc. |
| PO Box 801083 | |
| Houston, TX 77280-1083 | |
| | |
| Washington County Circuit Court | Assignee or other notification for: |
| 150 N. 1st Avenue | Bank of America & Kraus USA, Inc. |
| Hillsboro, OR 97124 | |
| | |
| Wayne Godare | Chapter 13 Trustee |
| 222 SW Columbia St #1700 | c0urtmai1@portland13.com |
| Portland, OR 97201 | |
| | |
| US Trustee, Portland | Office of the United States Trustee |
| 620 SW Main St# 213 | USTPRegion18.PL.ECF@usdoj.gov |
| Portland, OR 97205 | |

*/s/ Michele Dapello*

An Employee of Zieve, Brodnax, & Steele, LLP

# NOTE

December 23, 2002      _____CLACKAMAS_____ , _____Oregon_____
                                               CITY                         STATE

19385 SW WINSLOW DRIVE, BEAVERTON, OR 97007
                                      PROPERTY ADDRESS

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ _273,000.00_ (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is _____Washington Mutual Bank_____ . I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of _5.375_ %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the _1st_ day of each month beginning on _February, 2003_ .

I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied to as of its scheduled due date and will be applied to interest before Principal. If on January 1st, 2018 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at _9451 CORBIN AVENUE, NORTHRIDGE, CA 91324_ _____ , or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ _2,212.57_ .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the prepayment amount, before applying my Prepayment to reduce the principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

1538 (03-01)                                **Page 1 of 4**

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __5.000__ % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by Applicable Law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless Applicable Law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce

Exhibit 1
Case 14-33163-dwh13    Doc 60    Filed 01/07/19

its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed ( the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. MISCELLANEOUS PROVISIONS

In the event the Note Holder at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical or ministerial mistake, calculation error, computer error, printing error or similar error (collectively "Errors"), I agree, upon notice from the Note Holder, to reexecute any Loan Documents that are necessary to correct any such Errors and I also agree that I will not hold the Note Holder responsible for any damage to me which may result from any such Errors.

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Note Holder delivers to me an indemnification in my favor, signed by the Note Holder, then I will sign and deliver to the Note Holder a Loan Document identical in form and content which will have the effect of the original for all purposes.

Exhibit 1
Case 14-33163-dwh13    Doc 60    Filed 01/07/19

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____
DAVID UZZLE

X _____
CAROLYN UZZLE

Pay to the order of

_____
Without Recourse
Washington Mutual Bank

_____
Jess Almanza, AVP

Exhibit 1
Case 14-33163-dwh13    Doc 60    Filed 01/07/19

Recording Requested By/Return To:
JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203
(800) 848-9380

Until Further Notice, Send All Tax
Statements to:
JPMORGAN CHASE BANK, N.A.
CHASE RECORDS CENTER
RE: COLLATERAL TRAILING
DOCUMENTS
PO BOX 8000
MONROE, LA 71203

———————————— [Space Above This Line For Recording Data] ————————————

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

**Loan Number**

     This Loan Modification Agreement ("Agreement"), will become effective on: 1ST day of MARCH, 2015, between DAVID UZZLE AND CAROLYN UZZLE HUSBAND AND WIFE ("Borrower")

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae   UNIFORM INSTRUMENT
ver. 01_20_2015_11_00_51

*(Page 1 of 10 pages)*

# Exhibit 1

and **JPMORGAN CHASE BANK, N.A.** ("Lender") whose address is **CHASE, 780 KANSAS, FLOOR 2, MONROE, LOUISIANA 71203-4774** amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed ("Security Instrument"), and Timely Payment Rewards Rider, if any, dated DECEMBER 23, 2002 and recorded in reference numbers of documents modified: RECORDED DECEMBER 31, 2002 INSTRUMENT NO. 2002-161129 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real property described in the Security Instrument and defined therein as the "Property", located at:

19385 SW WINSLOW DR, BEAVERTON, OREGON 97007
(Property Address)

the real property described being set forth as follows:

LEGAL DESCRIPTION:
THE LAND REFERRED TO IS SITUATED IN THE COUNTY OF WASHINGTON, CITY OF BEAVERTON AND STATE OF OREGON, DESCRIBED AS FOLLOWS: LOT 20, CROWN CREST, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON. PARCEL ID: R2049945

Tax Parcel No: R2049945

  In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of MARCH 01, 2015, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $112,319.48 consisting of the unpaid amount(s) loaned to the Borrower by the Lender plus any interest and other amounts capitalized.

2. The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 5.375%, from FEBRUARY 01, 2015. The Borrower promises to make monthly payments of principal and interest of U.S. $569.79, beginning on the 1ST day of MARCH, 2015, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 5.375% will remain in effect until the principal and interest are paid in full. If on FEBRUARY 01, 2055 (the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if the Borrower is not a natural person and a beneficial interest in the Property is sold or transferred) without the Lender's prior written consent, the Lender may require immediate payment in full of all sums secured by the Security Instrument.

  If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae   UNIFORM INSTRUMENT
ver. 01_20_2015_11_00_51

*(Page 2 of 10 pages)*

# Exhibit 1

mailed within which the Borrower must pay all sums secured by the Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on the Borrower.

4. The Borrower understands and agrees that:
   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, or by the United States Bankruptcy Code, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of the Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which the Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by the Lender.
   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.
   (d) All costs and expenses incurred by the Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by the Lender.
   (e) The Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by the Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.
   (f) That, if the Borrower is in bankruptcy upon execution of this document, the Borrower will cooperate fully with the Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. The Borrower understands that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

5. If the Borrower previously received a Chapter 7 bankruptcy discharge but did not reaffirm under applicable law amounts due under the Note:

   (a) Notwithstanding anything to the contrary contained in this Agreement, the Borrower and the Lender acknowledge the effect of a discharge in bankruptcy that, if granted to the Borrower prior to the execution of this Agreement,
   (b) The Lender may not pursue the Borrower for personal liability. However, the Borrower acknowledges that the Lender retains certain rights, including but not limited to, the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances.

    (c) The parties agree that the consideration for this Agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default thereunder.

    (d) Nothing in this Agreement shall be construed to be an attempt to collect against the Borrower personally or an attempt to revive personal liability.

6. The Borrower hereby absolutely and unconditionally assigns and transfer to the Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon this assignment, the Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in the Lender's sole discretion. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold estate.

The Borrower hereby absolutely and unconditionally assigns and transfers to the Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. The Borrower authorizes the Lender or the Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to the Lender or the Lender's agents. However, the Borrower shall receive the Rents until (i) the Lender has given the Borrower notice of default under this Agreement, pursuant to Section 22 of the Security Instrument, and (ii) the Lender has given notice to the tenant(s) that the Rents are to be paid to the Lender or the Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If the Lender gives notice of default to the Borrower: (i) all Rents received by the Borrower shall be held by the Borrower as trustee for the benefit of the Lender only, to be applied to the sums secured by the Security Instrument; (ii) the Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) the Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to the Lender or the Lender's agents upon the Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by the Lender or the Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) the Lender, the Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) the Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents, any funds expended by the Lender for such purposes shall become indebtedness of the Borrower to the Lender secured by the Security Instrument pursuant to Section 9 of the Security Instrument.

The Borrower represents and warrants that the Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent the Lender from exercising its rights under this paragraph.

The Lender, or the Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to the Borrower. However, the Lender, or the Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of the Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

7. By this paragraph, the Lender is notifying the Borrower that any prior waiver by the Lender of the Borrower's obligation to pay to the Lender funds for any or all Escrow Items is hereby revoked, and the Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. If the original loan documents did not include standard provisions for escrow items, the Borrower will pay to the Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by the Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to the Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that the Lender requires to be escrowed. These items are called "Escrow Items." The Borrower shall promptly furnish to the Lender all notices of amounts to be paid under this paragraph. The Borrower shall pay the Lender the Funds for Escrow Items unless the Lender waives the Borrower's obligation to pay the Funds for any or all Escrow Items. The Lender may waive the Borrower's obligation to pay to the Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, the Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by the Lender and, if the Lender requires, shall furnish to the Lender receipts evidencing such payment within such time period as the Lender may require. The Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If the Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and the Borrower fails to pay the amount due for an Escrow Item, the Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and the Borrower shall then be obligated to repay to the Lender any such amount. The Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, the Borrower shall pay to the Lender all Funds, and in such amounts, that are then required under this paragraph.

Exhibit 1
Case 14-33163-dwh13    Doc 60    Filed 01/07/19

The Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit the Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. The Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including the Lender, if the Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. The Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. The Lender shall not charge the Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless the Lender pays the Borrower interest on the Funds and applicable law permits the Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, the Lender shall not be required to pay the Borrower any interest or earnings on the Funds. The Lender and the Borrower can agree in writing, however, that interest shall be paid on the Funds. The Lender shall provide the Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, the Lender shall account to the Borrower for the excess Funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, the Lender shall notify the Borrower as required by RESPA, and the Borrower shall pay to the Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, the Lender shall promptly refund to the Borrower any Funds held by the Lender.

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

Exhibit 1
Case 14-33163-dwh13   Doc 60   Filed 01/07/19

Loan Number

## TO BE SIGNED BY BORROWER ONLY

**BORROWER SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And DAVID UZZLE AND CAROLYN UZZLE HUSBAND AND WIFE, LOAN NUMBER 8554602 WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2015**

In Witness Whereof, the Borrower(s) have executed this agreement.

_____     Date: 2, 2, 15
Borrower - **DAVID UZZLE**

_____     Date: 2, 2, 15
Borrower - **CAROLYN UZZLE**

State of **OREGON**
County of _COASHINGTON_

     This instrument was acknowledged before me on _February 2, 2015_
_____ by **DAVID UZZLE** and **CAROLYN UZZLE**.

_____
(Signature of notarial officer)

(Seal, if any)

Title or rank: Notary Public

My Commission expires: _June 30, 2018_

OFFICIAL STAMP
HELEN LOUISE CRABB
NOTARY PUBLIC - OREGON
COMMISSION NO. 930044
MY COMMISSION EXPIRES JUNE 30, 2018

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae   UNIFORM INSTRUMENT
ver. 01_20_2015_11_00_51

*(Page 7 of 10 pages)*

# Exhibit 1

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And DAVID UZZLE AND CAROLYN UZZLE HUSBAND AND WIFE, LOAN NUMBER 8554602 WITH A MODIFICATION EFFECTIVE DATE OF March 01, 2015

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:
Keiyada McCreight
Vice President

Date: _____2 / 12 / 15_____

**JPMC MODIFIED LOAN MODIFICATION AGREEMENT** – Single Family – Fannie Mae   UNIFORM INSTRUMENT
ver. 01_20_2015_11_00_51

Exhibit 1
Case 14-33163-dwh13    Doc 60    Filed 01/07/19

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ **Keiyada McCreight** _____, Vice President of JPMORGAN CHASE
BANK, N.A., a national banking association before me on the _12_ day of
_____, 2015

Signature _____

Printed name _____ **Delana Reaves** _____

Notary public, State of MICHIGAN, County of _Macomb_

My commission expires _12/17/2019_

Acting in the County of OAKLAND

DELANA REAVES
NOTARY PUBLIC ~ STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires 12/17/2019
Acting in the County of _Oakland_

JPMC MODIFIED LOAN MODIFICATION AGREEMENT – Single Family – Fannie Mae   UNIFORM INSTRUMENT
ver. 01_20_2015_11_00_51

*(Page 9 of 10 pages)*

# Exhibit 1

Loan Number 8554602

THIS PAGE INTENTIONALLY LEFT BLANK FOR RECORDER USAGE



Exhibit 1
Case 14-33163-dwh13    Doc 60    Filed 01/07/19

AFTER RECORDING RETURN TO:

Washington Mutual Bank
C/O ACS IMAGE SOLUTIONS
12691 PALA DRIVE - MS156DPCA
GARDEN GROVE, CA 92841



0023492920020161129017017

I, Jerry Hanson, Director of Assessment and Taxation
and Ex-Officio County Clerk for Washington County,
Oregon, do hereby certify that the within instrument of
writing was received and recorded in the book of
records of said county.

Jerry R. Hanson, Director of Assessment and Taxation,
Ex-Officio County Clerk

———————————— [Space Above This Line For Recording Data] ————————————
TRANSNATION TITLE INSURANCE

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated _____ December 23, 2002 _____, together with all Riders to this document.

**(B) "Borrower"** is _____ DAVID UZZLE AND CAROLYN UZZLE, AS TENANTS BY THE ENTIRETY _____

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 19385 SW WINSLOW DRIVE, BEAVERTON, OR 97007.

**(C) "Lender"** is _____ Washington Mutual Bank, a Washington corporation _____.
Lender is a _____ Bank _____ organized and existing under the laws of _____ Washington _____. Lender's address is _____ 1201 Third Avenue Seattle, WA 98101 _____.
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is _____ TRANSNATION TITLE INSURANCE, a Oregon corporation _____.
Trustee's mailing address is 10135 SE SUNNYSIDE RD #120, CLACKAMAS, OR 97015.

**(E) "Note"** means the promissory note signed by Borrower and dated _____ December 23, 2002 _____.
The Note states that Borrower owes Lender _____ Two Hundred Seventy-Three Thousand & 00/100 _____

Dollars (U.S. $ _____ 273,000.00 _____) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than _____ January 1, 2018 _____.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

OREGON
427 (02-01)                         Page 1 of 17

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider               ☐ 1-4 Family Rider
☐ Graduated Payment Rider     ☐ Planned Unit Development Rider  ☐ Biweekly Payment Rider
☐ Balloon Rider                     ☐ Rate Improvement Rider         ☐ Second Home Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds whether by way of judgment, settlement or otherwise, paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note; and (iii) the performance of all agreements of Borrower to pay fees and charges arising out of the Loan whether or not herein set forth. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power

OREGON
427 (02-01)

Exhibit 2
Case 14-33163-dwh13    Doc 60    Filed 01/07/19



2002-161129

of sale, the following described property located in _____Washington_____ County, Oregon:

LOT 20, CROWN CREST, IN THE COUNTY OF WASHINGTON AND STATE OF OREGON.

which currently has the address of _19385 SW WINSLOW DRIVE_____,
                                                                    [Street]

_____BEAVERTON_____ , Oregon _97007_ ("Property Address"):
        [City]                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic

OREGON
427 (02-01)                          Page 3 of 17

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance of the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke

Exhibit 2
Case 14-33163-dwh13    Doc 60    Filed 01/07/19



2002-161129

the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.



Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Lender may purchase such insurance from or through any company acceptable to Lender including, without limitation, an affiliate of Lender, and Borrower acknowledges and agrees that Lender's affiliate may receive consideration for such purchase. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such polices shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to all proceeds from any insurance policy (whether or not the insurance policy was required by Lender) that are due, paid or payable with respect to any damage to such property, regardless of whether the insurance policy is established before, on or after the date of this Security Instrument. By absolutely and irrevocably assigning to Lender all of Borrower's rights to receive any and all proceeds from any insurance policy, Borrower hereby waives, to the full extent allowed by law, all of Borrower's rights to receive any and all of such insurance proceeds.

Borrower hereby absolutely and irrevocably assigns to Lender all of Borrower's right, title and interest in and to (a) any and all claims, present and future, known or unknown, absolute or contingent, (b) any and all causes of action, (c) any and all judgments and settlements (whether through litigation, mediation, arbitration or otherwise), (d) any and all funds sought against or from any party or parties whosoever, and (e) any and all funds received or receivable in connection with any damage to such property, resulting from any cause or causes whatsoever,

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

including but not limited to, land subsidence, landslide, windstorm, earthquake, fire, flood or any other cause.

Borrower agrees to execute, acknowledge if requested, and deliver to Lender, and/or upon notice from Lender shall request any insurance agency or company that has issued any insurance policy to execute and deliver to Lender, any additional instruments or documents requested by Lender from time to time to evidence Borrower's absolute and irrevocable assignments set forth in this paragraph.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, or remove or demolish any building thereon, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in good condition and repair in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property in good and workman like manner if damaged to avoid further

OREGON
427 (02-01)

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

deterioration or damage. Lender shall, unless otherwise agreed in writing between Lender and Borrower, have the right to hold insurance or condemnation proceeds. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. Lender does not make any warranty or representation regarding, and assumes no responsibility for, the work done on the Property, and Borrower shall not have any right to rely in any way on any inspection(s) by or for Lender or its agent. Borrower shall be solely responsible for determining that the work is done in a good, thorough, efficient and workmanlike manner in accordance with all applicable laws.

Borrower shall (a) appear in and defend any action or proceeding purporting to affect the security hereof, the Property or the rights or powers of Lender or Trustee; (b) at Lender's option, assign to Lender, to the extent of Lender's interest, any claims, demands, or causes of action of any kind, and any award, court judgement, or proceeds of settlement of any such claim, demand or cause of action of any kind which Borrower now has or may hereafter acquire arising out of or relating to any interest in the acquisition or ownership of the Property. Lender and Trustee shall not have any duty to prosecute any such claim, demand or cause of action. Without limiting the foregoing, any such claim, demand or cause of action arising out of or relating to any interest in the acquisition or ownership of the Property may include (i) any such injury or damage to the Property including without limit injury or damage to any structure or improvement situated thereon, (ii) or any claim or cause of action in favor of Borrower which arises out of the transaction financed in whole or in part by the making of the loan secured hereby, (iii) any claim or cause of action in favor of Borrower (except for bodily injury) which arises as a result of any negligent or improper construction, installation or repair of the Property including without limit, any surface or subsurface thereof, or of any building or structure thereon or (iv) any proceeds of insurance, whether or not required by Lender, payable as a result of any damage to or otherwise relating to the Property or any interest therein. Lender may apply, use or release such monies so received by it in the same manner as provided in Paragraph 5 for the proceeds of insurance.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19


2002-161129

and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19


2002-161129

insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgement, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgement, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** This Security Instrument cannot be changed or modified except as otherwise provided herein or by agreement in writing signed by Borrower, or any Successor in interest to Borrower and Lender. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy. No waiver by Lender of any right under this Security Instrument shall be effective unless in writing. Waiver by Lender of any right granted to Lender under this Security Instrument or of any provision of this Security Instrument as to any transaction or occurrence shall not be deemed a waiver as to any future transaction or occurrence.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

OREGON
427 (02-01)                                  Page 11 of 17

Exhibit 2
Case 14-33163-dwh13    Doc 60    Filed 01/07/19



2002-161129

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Borrower shall pay such other charges as Lender may deem reasonable for services rendered by Lender and furnished at the request of Borrower, any Successor in interest to Borrower or any agent of Borrower. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note.) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security

OREGON
427 (02-01)

Page 12 of 17

Exhibit 2
Case 14-33163-dwh13    Doc 60    Filed 01/07/19



2002-161129

Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgement enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

"Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substance in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use, or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.  If Borrower or any successor in interest to Borrower files (or has filed against Borrower or any successor in interest to Borrower) a bankruptcy petition under Title II or any successor title of the United States Code which provides for the curing of prepetition default due on the Note, interest at a rate determined by the Court shall be paid to Lender on post-petition arrears.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the property without warranty to the person or persons legally entitled to it.  Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

OREGON
427 (02-01)

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19



2002-161129

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

**26. Protective Advances.** This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

**27. Required Evidence of Property Insurance.**

**WARNING**

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may , but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Exhibit 2
Case 14-33163-dwh13    Doc 60    Filed 01/07/19



2002-161129

X ~~Davd Uzzle~~
DAVID UZZLE

X ~~Carolyn Uzzle~~
CAROLYN UZZLE

——————————— (Space Below This Line For Acknowledgment) ———————————

STATE OF OREGON,

_Clackamas_____ County ss:

On this __20th__ day of __December_____, personally appeared the above named _David Uzzle & Carolyn Uzzle_____
and acknowledged the foregoing instrument to be __his/her/their__ voluntary act and deed.

WITNESS my hand and official seal affixed the day and year in this certificate above written.

Before me:

(Official Seal)

_mariah D yee_____
Notary Public for Oregon _____

My Commission expires: __6/12/06____

> OFFICIAL SEAL
> **MARIAH L YEE**
> NOTARY PUBLIC—OREGON
> COMMISSION NO. 358631
> MY COMMISSION EXPIRES JUNE 12, 2006

OREGON
427 (02-01)

Page 17 of 17

Exhibit 2
Case 14-33163-dwh13   Doc 60   Filed 01/07/19

Washington County, Oregon
09/11/2012 03:18:22 PM
D-MA      Cnt=1 Stn=12 S PFEIFER
$5.00 $5.00 $11.00 $15.00 $5.00 - Total =$41.00

**2012-075600**



01747088201200756000010013

I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.

Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact **JPMORGAN CHASE BANK, N.A.** for this instrument 780 Kansas Lane, Suite A, Monroe, LA
71203, telephone # (866) 756-8747, which is responsible for receiving payments.
FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the
undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON
MUTUAL BANK, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR),**
by these presents does convey, grant, sell, assign, transfer and set over the described **DEED OF TRUST** with all
interest secured thereby, all liens, and any rights due or to become due thereon to **JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203**
(866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said **DEED OF TRUST** dated 12/23/2002, and executed by: **DAVID UZZLE AND CAROLYN UZZLE** whose
address is 19385 SW WINSLOW DRIVE, BEAVERTON, OR 97007 to **WASHINGTON MUTUAL BANK** and
recorded on 12/31/2002 in Book n/a, Page n/a, as Instrument # 2002-161129 in the office of the Recorder of
WASHINGTON County, Oregon.

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its
corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on
September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12
U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on _08 , 26_ /2012 (MM/DD/YYYY)
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL
BANK, by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact      POA
RECORDED: 05/03/2012 DOC#: 20120503

By: _____
       Michael R McClutch
       **VICE PRESIDENT**

STATE OF LOUISIANA      PARISH OF OUACHITA
On _08 , 26_ /2012 (MM/DD/YYYY), before me appeared _Michael R McClutch_ ., to
me personally known, who did say that he/she/they is/are the VICE PRESIDENT of JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS
RECEIVER OF WASHINGTON MUTUAL BANK and that the instrument was signed on behalf of the corporation
(or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the
free act and deed of the corporation (or association).

_____
Helen P. Tubbs
Notary Public - State of LOUISIANA
Commission expires: Upon My Death
Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Exhibit 3

Washington County, Oregon  **2017-066246**
D-MA
Stn=0 J CHOATE       08/21/2017 08:41:16 AM
$5.00 $11.00 $5.00 $20.00                  **$41.00**

I, Richard Hobernicht, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, Oregon, do hereby certify that the within instrument of writing was received and recorded in the book of records of said county.

Richard Hobernicht, Director of
Assessment and Taxation, Ex-Officio

When Recorded Return To:
JPMogan Chase Bank
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## CORPORATE ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203, (ASSIGNOR), by these presents does convey, grant, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to MTGLQ INVESTORS, L.P., WHOSE ADDRESS IS 6011 CONNECTION DRIVE, IRVING, TX 75039, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Deed of Trust executed by DAVID UZZLE AND CAROLYN UZZLE to WASHINGTON MUTUAL BANK, and recorded on 12/31/2002, in Doc # 2002-161129, in the office of the Recorder of WASHINGTON County, Oregon.

Dated on   08 /17 /2017 (MM/DD/YYYY)
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

By:
_____I'eisha C Merrell_____
~~Vice President~~

STATE OF LOUISIANA    PARISH OF OUACHITA
On       08 /17 /2017        (MM/DD/YYYY),        before        me        appeared
_____I'eisha C Merrell_____, to me personally known, who did say that he/she/they is/are the
~~Vice President~~ of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
and that the instrument was signed on behalf of the corporation (or association), by authority from its board of directors, and that he/she/they acknowledged the instrument to be the free act and deed of the corporation (or association).

_____YOLANDA A DIAZ_____
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

YOLANDA A. DIAZ
STATE OF LOUISIANA
LIFETIME COMMISSION
NOTARY ID #87401

Document Prepared By: _____I'eisha C Merrell_____, JPMorgan Chase Bank, N.A., 780 Kansas Lane, Suite A, Monroe, LA, 71203, 800-401-6587

Exhibit 3
Case 14-33163-dwh13   Doc 60   Filed 01/07/19

Recording Requested By:
The Goldman Sachs Group, Inc.
Prepared By: Audrey B Trumble
855-369-2410
When recorded mail to:

_____

Tax ID:      R2049945
Property Address:
19385 SW WINSLOW DRIVE
BEAVERTON, OR 97007

This space for Recorder's use

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 2001 Ross Avenue, Suite 2800, Dallas, TX 75201 does hereby grant, sell, assign, transfer and convey unto U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE CHALET SERIES III TRUST whose address is 7114 E Stetson Dr., Suite 250, Scottsdale, AZ 85251 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Beneficiary:                   WASHINGTON MUTUAL BANK, A WASHINGTON CORPORATION

Original Borrower(s):    DAVID UZZLE AND CAROLYN UZZLE, AS TENANTS BY THE ENTIRETY

Original Trustee:          TRANSNATION TITLE INSURANCE, A OREGON CORPORATION

Date of Deed of Trust: 12/23/2002        Original Loan Amount: $273,000.00

Recorded in Washington County, OR on: 12/31/2002, book N/A, page N/A and instrument number 2002-161129

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

OCT 0 9 2018

MTGLQ Investors, L.P.

By: _____
Betsy Hanson, Vice President

State of TX, County of Dallas

On __OCT 0 9 2018__ before me, __Danielle Bolin__, a Notary Public, personally appeared Betsy Hanson, Vice President of MTGLQ Investors, L.P. personally known to me to be the person(s) whose name(s) is/are subscribed to the within document and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the document the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: __Danielle Bolin__
My Commission Expires :  **NOV 1 1 2019**

DANIELLE BOLIN
Notary Public, State of Texas
Comm. Expires 11-11-2019
Notary ID 130437026

Exhibit 3
Case 14-33163-dwh13   Doc 60   Filed 01/07/19

| Date Received | Amount Due | Amount Received | Principal | Interest | Late Fee | Escrow | Suspense | total suspense |
|---|---|---|---|---|---|---|---|---|
| 9/9/2014 | $ 2,212.58 | $ 2,212.57 | $ 1,764.96 | $ 447.61 | | | | |
| 10/6/2014 | | $ 1,126.45 | $ 1,772.87 | $ 439.70 | | | $ 1,126.45 | |
| 11/5/2014 | $ 2,212.58 | $ 3,611.06 | $ 1,780.81 | $ 431.76 | | | $ 3,611.06 | |
| 11/5/2014 | | | | | | $ 0.01 | $ 4,425.16 | |
| 11/5/2014 | | | | | | $ 0.01 | | |
| 12/1/2014 | | $ 1,437.65 | | | | | $ 1,437.65 | |
| 1/5/2015 | | $ 1,895.00 | $ 66.69 | $ 503.10 | | | $ 1,895.00 | |
| 2/2/2015 | | $ 947.50 | $ 66.99 | $ 502.80 | | | $ 947.50 | |
| 3/2/2015 | | $ 1,404.10 | | | | | $ 834.31 | |
| 4/2/2015 | | $ 1,404.10 | $ 67.29 | $ 502.50 | | $ 834.31 | | |
| 4/2/2015 | | $ 2,037.12 | $ 67.59 | $ 502.20 | | | $ 2,037.12 | |
| 4/3/2015 | | | $ 67.90 | $ 501.89 | | $ 849.91 | | |
| 4/3/2015 | | | | | | $ 849.81 | | |
| 5/4/2015 | | $ 1,018.56 | | | | | $ 1,018.60 | |
| 5/6/2015 | | $ 1,419.60 | $ 68.20 | $ 501.59 | | $ 849.81 | | |
| 6/1/2015 | | $ 1,018.56 | | | | | $ 1,018.56 | $ 2,182.54 |
| 6/2/2015 | | | | | | $ 849.81 | $ 1,162.94 | $ 762.94 |
| 8/3/2015 | | $ 400.00 | | | | | $ 400.00 | $ 1,162.94 |
| 10/2/2015 | | $ 400.00 | $ 68.50 | $ 501.29 | | | $ 400.00 | $ 1,562.94 |
| 11/3/2015 | | $ 200.00 | | | | | $ 200.00 | $ 1,762.94 |
| 12/14/2015 | | | | | | $ 849.81 | | $ 343.34 |
| 1/4/2016 | | $ 730.54 | | | | | $ 730.54 | $ 1,073.38 |
| 1/19/2016 | | $ 419.60 | | | | | $ 419.60 | $ 1,493.48 |
| 2/1/2016 | | $ 467.50 | | | | | $ 467.50 | $ 1,960.98 |
| 3/2/2016 | | $ 467.50 | | | | | $ 467.50 | $ 2,428.48 |
| 4/4/2016 | | $ 467.50 | | Misapplication reversal | | | $ 467.50 | $ 2,895.98 |
| 5/2/2016 | | $ 467.50 | | | | | $ 467.50 | $ 3,363.48 |
| 5/3/2016 | | | | | | | | $ (2,895.98) |
| 6/2/2016 | | $ 467.50 | | | | | $ 467.50 | $ 935.00 |
| 7/5/2016 | | $ 467.50 | | | | | $ 467.50 | $ 1,402.50 |
| 8/1/2016 | | $ 467.50 | | | | | $ 467.50 | $ 1,870.00 |
| 9/2/2016 | | $ 467.50 | | | | | $ 467.50 | $ 2,337.50 |
| 10/3/2016 | | $ 467.50 | $ 68.50 | $ 501.29 | | | $ 467.50 | $ 2,442.18 |
| 11/2/2016 | | $ 465.00 | $ 68.81 | $ 500.98 | | | $ 465.00 | $ 2,907.18 |
| 11/3/2016 | | | | | | $ 849.81 | | |
| 11/3/2016 | | | | | | $ 849.81 | | $ 67.98 |
| 12/2/2016 | | $ 465.00 | | | | | $ 465.00 | $ 532.98 |
| 1/3/2017 | | $ 465.00 | | | | | $ 465.00 | $ 997.98 |
| 12/10/2018 | | $1,419.60 | $70.68 | $499.11 | $28.49 | $849.81 | $0.00 | $1,017.58 |

Exhibit 4

Case 14-33163-dwh13    Doc 60    Filed 01/07/19